IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBRA K. SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 04-0366-BH-C |
| MOBILE INFIRMARY MEDICAL CENTER, | ) | |
| WILLIAM S. ROBERTS, CHRIS | ) | |
| LAWRENCE, and BARRY JONES, | ) | |
| | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT; CONCLUSIONS OF LAW
AND ORDER**

This action is before the Court on defendants' respective motions (Docs. 28 and 30)

for summary judgment.  Upon consideration of the motions, plaintiff's brief in opposition

thereto (Doc. 40), defendants' replies (Docs. 45 and 46), and all other pertinent portions of

the record, the Court concludes that the motions are due to be granted.

**FINDINGS OF FACT**

The Court has considered all the evidence of record, both testimonial and

documentary, and finds that the following facts are undisputed or uncontradicted by the

plaintiff.

**I.  Scott Roberts**

1.       On June 7, 2004, the plaintiff, Debra K. Simmons ("Simmons") filed a multi-

count Complaint which included several counts against the individual defendant, Scott

Roberts ("Roberts").  On August 31, 2004, this Court entered an Order (Doc. 19)

dismissing all but one of the Counts against Roberts.  The sole remaining claim against this defendant is for Assault under Alabama tort law as set forth in Count II of the Complaint.

2.      In her complaint, Simmons alleges not only that Roberts sexually harassed her by fondling her breasts on or about May 28, 2002, but that he, for several months preceding that date, sexually harassed her through remarks, a grabbing of her buttocks and other sexual advances through unwanted conduct.  Simmons has now conceded in both her deposition and her brief in opposition to defendants' motions for summary judgment, that any alleged touching by Roberts       occurred between the dates of August of 2001 and March of 2002.  (Simmons' Opposition Brief at 9, *citing*, Simmons' Dep.at p. 41, ll.18-20 and p. 42, ll.1-3).

## II.  Mobile Infirmary Medical Center

1.      Simmons was initially employed by Mobile Infirmary Medical Center ("MIMC") in March 1996.  She left in good standing in December 1997 and was rehired on or about September 4, 2001.  Simmons was employed as a respiratory therapist and worked in the department of Pulmonary Services.  (Compl. ¶ 11).  She is still employed with MIMC today.

2.      Roberts began his employment with MIMC as a respiratory therapist in the department of Pulmonary Service.  From 1989 until 2000 he worked part time.  (Roberts Dep., at pp. 11-12).  In June 2000, he became a full time employee of MIMC and in late 2001 he applied for and was promoted to a supervisory position.  (Roberts Dep., at p. 21).

3.      MIMC requires all new employees to attend an orientation.  (Stembridge

Aff.).  Simmons and Roberts attended such an orientation which includes a presentation by

the Department of Human Resources.  The presentation covers the "Anti Harassment

Policy" which states the purpose of the policy; explains what conduct is not permitted;

describes in detail the complaint/reporting procedures; and also includes suggested

guidelines for reporting the harassment.  (Stembridge Aff).  Although Simmons testified

that she did not remember any presentation about harassment (Simmons Dep. at 45), she

does not dispute that the policy is available in the Personnel Policy Manual located in every

department and is also posted on several employee bulletin boards throughout the hospital,

including three on the same floor where Plaintiff's department is located and another on the

walkway to the employee parking garage. (Stembridge Aff).  The "Anti Harassment Policy"

states, in part:

> (1) any employee or agent who is subjected to harassment
> should report such conduct to the Human Resources
> Department.  Such employee should report only to a Human
> Resources Department Coordinator, Manager, Director or
> Vice President.  In the event Human Resources personnel are
> not available (e.g., night/weekend shifts) the employee should
> report the behavior to any supervising or management
> personnel with whom he or she feels comfortable.

(Stembridge Aff., Ex. A).

4.      The Department of Pulmonary Services performs respiratory therapy

services for patients throughout the hospital.  Each therapist is assigned to a certain area

and certain patients for each shift.  They would receive their assignments and perform their charting in a common area they refer to as the "tech room".  (Evans Dep., at pp. 309-10).

5.      Simmons reported that she never had any complaints with Roberts during her first employment at MIMC from 1996 to 1997.  According to Simmons, the first incident of sexual harassment by Roberts occurred in September 2001. (Simmons Dep. at p. 42).

6.      Simmons claims that between September 2001 and March 2002 Roberts touched her breasts four to five times.  (Simmons Dep., at p. 42).  Simmons neither said anything to Roberts concerning these alleged incidents nor reported these incidents to her supervisor.  (Simmons Dep., at p. 42).

7.      Simmons also testified at her deposition that around May 28, 2002, Roberts on one occasion came up behind her, put his hands on her hips, said something in her ear and then pressed his body against hers.  (Simmons Dep., at pp. 158, 47).  The last and only other alleged incident of sexual harassment, according to the Simmons' testimony at her deposition, was on June 2, 2002 when Roberts gave Simmons her yearly evaluation.  On that occasion, she stated that he pulled his chair up next to hers and he touched her leg with his leg.  (Simmons Dep., at p. 51).  As stated above, however, Simmons has now conceded that any alleged touching by Roberts occurred between the dates of August of 2001 and March of 2002.  (Simmons' Opposition Brief at 9, *citing*, Simmons' Dep.at p. 41, ll.18-20 and p. 42, ll.1-3).

4

8.    Roberts never said anything to Simmons of a sexual nature and he never made any suggestions that Simmons had to perform sexual favors in order to receive a good evaluation.  (Simmons Dep., at pp. 52, 211).

9.    The first time Simmons reported any of the incidents of alleged sexual harassment was on July 29, 2002 when she reported the incidents to the Department of Human Resources.  (Stembridge Dep., at p. 76-77).  During the initial conversation, Simmons did not give any details concerning the alleged harassment.  On July 31, 2002, Simmons and Mr. Stembridge met to discuss the specifics of the alleged acts of sexual harassment.  (Stembridge Dep., at p. 78).

10.   Prior to Simmons' July 29th complaint, Pulmonary Department Head, Barry Jones, had received a complaint on June 13, 2002, from another respiratory therapist, Karri Evans, about inappropriate conduct by Roberts occurring between April 2002 and June 10, 2002. (Jones Dep. at pp. 18-19; Stembridge Aff., Ex. B).  Evans' complaint was investigated.  Although Roberts denied the conduct, he was nonetheless counseled on June 18, 2002.

11.   On July 10, 2002, a second therapist, Melissa Hanes, reported to Stembridge conduct by Roberts which occurred during the period from mid-April 2002 to June 5, 2002.  Her complaint was investigated.  Both Roberts and a purported witness denied her allegations. (Stembridge Dep., at pp. 40-43, 60, 64; Stembridge Aff., Ex. C).

12.   Even though there were no allegations of harassment by Roberts following his counseling on June 18, and even though Roberts denied the allegations, Stembridge and

Jones removed Roberts from his supervisory position on July 26, 2002, because of the

seriousness of the allegations and the perception that some inappropriate activity occurred.

(Stembridge Dep., p. 62; Jones Dep., pp. 30-31).  He was also moved to the day shift (7:00

a.m. to 3:00 p.m.) position where he could be supervised more closely.  (*Id.*).  Roberts was

demoted in title and responsibility and his compensation was reduced by a couple thousand

dollars a year in that he no longer received a shift differential.  (Stembridge Dep. pp. 73,

110-11).  These decisions were made several days before Simmons reported her

complaints of inappropriate conduct by Roberts.  Simmons complaint related to conduct

that purportedly occurred before Roberts counseling on June 18.  There were no

allegations by anyone of inappropriate conduct after that date.

   12. Simmons admits there were no further incidents of sexual harassment after

July 31, 2002 or, in fact, after June 2, 2002).  (Simmons Dep., at p. 73).

   13. Simmons further claims that after she reported the alleged sexual harassment

to the Department of Human Resources at MIMC and the EEOC, she began to suffer

retaliation from her supervisors.  Simmons described the retaliation as in the form of her

workloads being increased, her work being scrutinized, and a change in attitude towards her

by her supervisors.  (Simmons Dep., at p. 97).  Simmons specifically testified:

> . . . after I reported Scott – that there everything – everything
> there changed.  My workloads increased.  They nitpicked at all
> of my charting.  Their whole attitude towards me was different.
> I was told by Bruce Miller I was being retarded.  Several things.

(Simmons Dep., p. 97).  After more than 25 pages of deposition testimony discussing

these complaints, Simmons confirmed as follows:

> Q       What other complaints do you have against anybody from the hospital
>         besides the workload and the nitpicking and Mr. Miller telling you it
>         was retarded for him to count your assignment cards?
>
> A       Anybody else?  No.

(Simmons Dep., p. 124).  Simmons could not articulate any actual tangible employment

actions she suffered as a result of her reporting Roberts and has proffered no evidence of

any such actions.[1]

## CONCLUSIONS OF LAW

1.       **Summary Judgment Standard**

Defendants are entitled to summary judgment "if the pleadings, depositions, answers

to interrogatories and . . . affidavits . . . show that there is no *genuine* issue as to any

*material* fact and that [the defendants are] entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c)  (emphasis added).  Under Rule 56(c):

> A factual dispute is "genuine" if the evidence is such that a
> reasonable jury could return a verdict for the non-moving party.
> A fact is "material" if it might affect the outcome of the suit
> under governing substantive law.

---

[1] Simmons' reference to her required signing of a confidentiality agreement as an act of retaliation is a red herring.  In September 2002, all employees were required to sign a new confidentiality agreement which corresponded with the revised IHS Confidentiality Policy to comply with HIPAA.  (Confidentiality Agreement attached to Plaintiff's Complaint; Ex. 2, Hanes Dep., Revised IHS Confidentiality Agreement.)  Simmons admits all employees in her department had to sign the new policy and admits it was changed to comply with HIPAA.  (Simmons Dep., p. 125).  Her own testimony thus rebuts any inference that this action was a adverse employment action causally related to her complaints about Roberts.

*Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for [the plaintiffs], there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the plaintiff fails to produce sufficient evidence to raise a genuine issue of material fact on the existence of an essential element of their claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986*); Manor Healthcare Corp. V. Lomelo,* 929 F.2d 633, 636 (11th Cir. 1991). In considering defendants' motions for summary judgment, the Court views the facts presented, together with all reasonable inferences arising from the facts, in the light most favorable to the plaintiffs. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004). As the moving party, the defendants have the initial burden of showing the absence of a genuine issue of material fact. *Id.* Once the defendants make that showing, the burden shifts to the plaintiff to "come forward with *specific* facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (1986). Confronted with a properly supported motion for summary judgment, the plaintiff must adduce admissible evidence which creates a material factual dispute. *Clarke v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Plaintiff must do more than "simply show there is some metaphysical doubt as to the material facts." *Anderson,* 477 U.S. at 251-52. She must produce evidence. *Id.*

2.     __Scott Roberts - Assault/Battery Claim__

In order to succeed on her assault claim against Roberts, Simmons must establish:

(1) that Roberts touched her; (2) that Roberts intended to touch her; and (3) that the

touching was conducted in a harmful or offensive manner.  *Ex parte Atmore Community*

*Hosp.*, 719 So.2d 1190, 1194 (Ala. 1998).   A successful assault becomes a battery, which

consists of the touching of another in a hostile manner. *Wright v. Wright*, 654 So.2d 542,

544 (Ala. 1995), *citing*, *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986), and

*Singer Sewing Machine Co. v. Methvin*, 184 Ala. 554, 561, 63 So. 997, 1000 (1913).  The

Court must agree that Simmons' failure to complain or otherwise protest Roberts' alleged

conduct at the time it occurred suggests that she did not, for whatever reason, perceive the

conduct as offensive at the time.  *See e.g.*, *Paraohao v. Banker's Club, Inc.*, 225 F.Supp.

2d 1353, 1359 (S.D. Fla. 2002)("The correct inquiry is whether the [plaintiff] by her

conduct indicated that the [complained--of behavior] was unwelcome."), *quoting*, *Meritor*

*Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986). In the present case, Simmons did not

complain about Roberts' conduct until almost two months after the last "offensive" conduct

occurred.  Moreover, she never advised Roberts in any manner that his conduct was

unwelcome.  (Simmons Dep. at 39, 41, 42, and 165).  There is no evidence in this record to

support the contention that Simmons subjectively believed at the time Roberts' conduct

occurred that it was offensive or that she perceived it to be "sexually harassing."

In addition, Simmons has proffered no evidence that she was physically threatened

or humiliated by Roberts' conduct.  Simmons testified that she was not fearful of Roberts

9

ever physically harming her.  When asked, "Well, did you ever think he was going to physically harm you?", Simmons answered, "Physically, No."  (Simmons dep. at 181-182). According to Simmons, there were no further incidents of sexual harassment at the hands of Roberts since June 2, 2002.

Even if it could be said that a question of material fact existed regarding whether Roberts' conduct was offensive or harmful, Simmons claim for assault/battery is barred by the applicable statute of limitations.  The Code of Alabama provides that "all actions for an injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."  Ala. Code § 6-2-38(1). Consequently, the applicable statute of limitations for a claim of assault is two years. *Wright, supra,* 654 So.2d at 544.  Simmons has testified that the last incident of alleged touching by Roberts actually occurred between the dates of August of 2001 and March of 2002.  (Simmons' Opposition Brief at 9, *citing*, Simmons' Dep.at p. 41, ll.18-20 and p. 42, ll.1-3). Simmons did not file the present cause until June 7, 2004, approximately two months after the statute of limitations had, at the very latest, expired.

Simmons' contention that the limitations period was somehow tolled by the EEOC proceedings is unsupported by law and entirely without merit.  It is well-established that the statute of limitations for a plaintiff's state law claims is not tolled while the plaintiff is pursuing administrative remedies with the EEOC.  *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 (1975) (limitations period for § 1981 claim not tolled during the time the EEOC conducted an administrative hearing on the Title VII claim as the two claims

are separate and distinct); *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir. 1980) (filing of a charge with the EEOC does not toll statute of limitations applicable to a § 1981 claim based on same discriminatory events);*Gardner v. St. Bonaventure Univ.,* 171 F. Supp.2d. 118, 131 (W.D.N.Y.2001) (refusing to toll the statute of limitations for state law claims during pendency of EEOC proceeding); *Stordeur v. Computer Associates Int'l, Inc.*, 995 F. Supp. 94, 99 (E.D.N.Y.1998) (same). Consequently, Simmons claims against Roberts is barred and Roberts is, therefore, entitled to summary judgment in his favor.

       3.     **Mobile Infirmary Medical Center - Hostile Work Environment Claim**

      Simmons does not challenge MIMC's assertion that she has presented no evidence of *quid pro quo* harassment, namely harassment by Roberts which resulted in a tangible employment action such as discharge, demotion or undesirable reassignment.  *See e.g.*, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)("Defined tangible employment action as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").  *See also*, *Lindsey v. Burlington Northern Santa Fe Railway Co.,* 266 F. Supp. 2d 1338, 1344 (N.D. Ala. 2003)("An adverse employment action, for purposes of Title VII liability, involves 'a serious and material change in the terms, conditions, or privileges of employment'."), *quoting*, *Davis v. Town of Lake Park, Fla.,*  245 F.3d 1232, 1239 (11th Cir. 2001). Simmons, according to her arguments in opposition to defendants' motions for summary

judgment, essentially concedes that she is asserting a claim under Title VII for a hostile

environment.

In *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002), the

Eleventh Circuit set forth the elements necessary to support a hostile environment claim:

> Title VII of the Civil Rights Act of 1964 prohibits employers from
> discriminating "against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, or national
> origin." 42 U.S.C. § 2000e- 2(a)(1). A hostile work environment claim
> under Title VII is established upon proof that "the workplace is
> ***permeated with discriminatory intimidation, ridicule, and insult,***
> ***that is sufficiently severe or pervasive to alter the conditions of the***
> ***victim's employment and create an abusive working environment***."
> *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370,
> 126 L.Ed.2d 295 (1993). This court has repeatedly instructed that a
> plaintiff wishing to establish a hostile work environment claim show:
> (1) that he belongs to a protected group; (2) that he has been subject to
> unwelcome harassment; (3) that the harassment must have been based
> on a protected characteristic of the employee, such as national origin;
> (4) that the ***harassment was sufficiently severe or pervasive to alter***
> ***the terms and conditions of employment and create a***
> ***discriminatorily abusive working environment***; and (5) that the
> employer is responsible for such environment under either a theory of
> vicarious or of direct liability.

277 F.3d at 1275 (emphasis added).  *See also*, *Mendoza v. Borden, Inc.*, 195 F.3d 1238,

1245 (11th Cir.1999) (applying these factors in the context of a hostile environment sexual

harassment claim).  The EEOC Guidelines describe the kinds of workplace conduct that

may be actionable under Title VII as "sexual harassment" to include "[u]nwelcome sexual

advances, requests for sexual favors, and other verbal or physical conduct of a sexual

nature." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), *quoting*, 29 CFR §

1604.11(a) (1985).  The Guidelines further provide, however, that such sexual misconduct constitutes prohibited "sexual harassment" only "where 'such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment'." *Id.*, *quoting*, 29 CFR § 1604.11(a)(3).

Consequently, the fourth element, whether the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," is the element that tests the legitimacy of most harassment claims and is therefore regarded as crucial. *See, Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *citing,  Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).    Only when the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the [employee's] employment and create an abusive working environment," is the law violated. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), *quoting*, *Meritor,*  477 U.S. at 67.

The employee must, therefore,  make both a subjective and an objective showing in order to establish that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment.   *Mendoza*, 195 F.3d at 1246. The employee must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive. *Gupta*, 212 F.3d at 583, *citing*, *Mendoza*, 195 F.3d at 1246. The

13

objective severity of harassment should be judged from the perspective of a reasonable person in the employee's position, considering all of the circumstances. *Mendoza*, 195 F.3d at 1246, *citing*, *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 81 (1998).

In determining whether the harassment objectively altered an employee's terms and conditions of employment, the following four factors should be considered: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether conduct unreasonably interferes with the employee's job performance. *Id.* *Mendoza*, 195 F.3d at 1246, *citing*, *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir.1997). The conduct must be examined in context, not as isolated acts, and the severity and pervasiveness of the conduct it must be judged under the totality of the circumstances. *Allen*, 121 F.3d at 647. *See also*, *Harris*, 510 U.S. at 23; *Henson*, 682 F.2d at 904; *Faragher*, 524 U.S. at 787-88.

Although the Court would agree that the nature of the conduct about which Simmons complains, namely that Roberts touched her breast four to five times, put his hands on her hips one time and brushed her leg once, cannot honestly be characterized as "normal day-to-day interactions between members of the opposite sex," the crudeness of the alleged behavior does not itself establish that the conduct was either harassing within the meaning of the law or sufficiently severe or pervasive so as to alter the plaintiff's terms or conditions of employment. Whether or not Simmons agrees, the law is clear that not all

14

offensive conduct, however inappropriate or vulgar, is unlawful conduct.  *See e.g., Jones v. Clinton*, 909 F. Supp. 657, (E.D. Ark. 1998) (hand on leg moving towards pelvis, attempted kiss and exposure of genitals, "while boorish and offensive" . . . is not so severe and pervasive . . . to have altered condition of employment and created an abusive environment.).   To cross the line to unlawful conduct, offensive conduct  must be sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment.  *Meritor,* 477 U.S. at 67.  The sporadic incidents complained of by Simmons, occurring over at least five years of working together, do not cross the line under this analysis.  Compare the following authorities which failed to find an unlawfully hostile environment under factual allegations similar or far worse than those made by Simmons:  *Hockman v. Westward Comm. LLC*, 122 Fed.Appx. 734, 2004 WL 2980351 (5th Cir. 2004) (grabbing breasts and "behind" not severe conduct).  *Meriweather v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir. 2003) (grabbing buttocks "with force" did not satisfy high threshold of actionable hostile environment); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir. 1993) (placing hand on leg above the knee, rubbing upper thigh, kissing and lurching at her did not create an objectively hostile environment).  *See also Mendoza v. Bordon,* 195 F.3d 1238, 1246-47 (11th Cir. 1999) (detailing additional cases).

  As applied to the case at bar and as stated above, Simmons failure to complain or otherwise protest Roberts' alleged conduct at the time it occurred suggests that she did not, for whatever reason, perceive the conduct as offensive at the time.  *See e.g., Paraohao v.*

*Banker's Club, Inc.*, 225 F.Supp. 2d 1353, 1359 (S.D. Fla. 2002)("The correct inquiry is whether the [plaintiff] by her conduct indicated that the [complained--of behavior] was unwelcome."), *quoting*, *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986). In the present case, Simmons did not complain about Roberts' conduct until almost two months after the last "offensive" conduct occurred.  Moreover, she never advised Roberts in any manner that his conduct was unwelcome.  (Simmons Dep. at 39, 41, 42, and 165).  There is no evidence in this record to support the contention that Simmons subjectively believed at the time Roberts' conduct occurred that it was offensive or that she perceived it to be "sexually harassing."  There is certainly no evidence in this record that it affected in any way the performance of her job.

Even if it could be said that Simmons demonstrated an unlawful hostile environment, she cannot prevail because there exists no genuine issue that MIMC "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that Simmons "unreasonably failed to take advantage of any preventative or corrective opportunities . . . or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Although Simmons does not remember going over the harassment policy at orientation, it is undisputed that the policy was reviewed in orientation, is available in each department and is posted on various bulletin boards.  In enacting, enforcing and disseminating the anti-harassment policy MIMC "exercised reasonable care to prevent harassment."  *See Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548 (11th Cir. 1997).

16

Whether or not Simmons agrees with MIMC's response to her complaint, or to its response to the complaints of her co-workers, it is undisputed that MIMC reacted immediately to each complaint, investigated it and took action to correct the behavior: Initially with Karri Evans, Barry Jones conducted an investigation, called several meetings, formally counseled Roberts and documented the action in Roberts' file. With Melissa Hanes, Randy Stembridge launched an investigation, interviewed a number of witnesses and in conjunction with Jones decided to remove Roberts from his supervisory role and to a shift where he could be more closely supervised. With Simmons, the actions to correct the problem had already been decided and Simmons was encouraged to stay on the shift where she would have less interaction with Roberts. MIMC thus "exercised reasonable care to correct promptly any alleged sexually harassing behavior."

The record is clear that Simmons unreasonably failed to take advantage of preventative opportunities to avoid harm. She failed to report any objectionable conduct for over 10 months, and waited four months after the last alleged breast touching and two months after the last incident. Her only excuse was that she was afraid to report it but she offers no basis for her fears. The Court agrees that this is insufficient to excuse failure to follow a policy. *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1288 (11th Cir. 2001).

Simmons argues that MIMC's response constituted nothing more than a "fraudulent demotion" of Roberts. Simmons' reasoning is mere sophistry. It is undisputed that Roberts was removed from his team leader position and ceased to supervise Simmons (or

17

her co-workers, Hanes and Evans).  It is undisputed he lost shift differential and was moved

to day shift where he could be more closely supervised.  All of these actions were taken to

prevent any further claims of inappropriate conduct.  Simmons conceded that these

corrective measures were successful.

That Roberts received a transfer involving a raise when two years later there had

been no further claim of offensive conduct is a non-issue.  (Roberts Dep., p. 23).  The

evidence of record establishes that: (1) Roberts still was not supervising anyone,

particularly the complainants against him, (Roberts Dep., p. 25); and (2) the law does not

require that an accused unconfessed harasser never be given the right to earn his way back

into his employer's good graces with a clean record and strong job performance.

While it is clear that Simmons does not believe Roberts was sufficiently punished, she

cannot dispute that MIMC's actions corrected the purported problem.  As recognized by the

Eleventh Circuit in *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548 (11th Cir.

1997).

> Although Farley remains unsatisfied with ACIPO's resolution of her
> complaint, we have never stated . . . that a complainant in  a discrimination
> action has a right to the remedy of her choice.

*Id.* at 1555.

### 4.  **Mobile Infirmary Medical Center - Retaliation Claim**

To establish a prima facie case of retaliation under Title VII, Simmons must prove

the following:  (1) she participated in an activity protected by Title VII; (2) she suffered an

adverse employment action; (3) there is causal connection between the participation and

the protected activity and the adverse employment decision. *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (citing *Farley v. Nationwide Mut. Ins.,* 197 F.3d 1322, 1336 (11th Cir. 1999)). Simmons failed to prove both that she suffered an adverse employment action and that there is a causal connection between the participation and the protected activity in any alleged adverse employment decision.

With respect to her claim of retaliation, Simmons conceded during her deposition that her retaliation claim was predicated only on an alleged increase in her workloads, the scrutiny given her work and change in attitudes towards her by her supervisors. (Simmons Dep. at 97 and 124). Nothing in Simmons' description of the alleged transgressions against her after she reported Roberts' conduct amounts to an "adverse employment action" sufficient to establish a retaliation claim. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). The courts have defined "adverse employment action" as requiring an "ultimate employment decision" *id.* or a serious and material change in the terms, conditions or privileges of employment. *Davis v. Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001).

An adverse employment action must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998). In *Merriweather v. Alabama Dept. of Public Safety,* 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998), *aff'd* 199 F.3d 443 (11th Cir. 1999), the plaintiff alleged that in retaliation she was given negative job evaluations, written

19

counseling statements and limitations on assignments.  The court dismissed the claim on

summary judgment, concluding:

> Merriweather has alleged no loss of pay, benefits, job classification, or
> change of duties as a result of this alleged retaliation.  Considering this
> evidence in the light most favorable to the plaintiff, this court finds that the
> evidence is insufficient to support...an adverse employment action.

17 F.Supp. at 1274-76.  The court held that an employment action involving no appreciable

change in working conditions simply cannot constitute an adverse employment action.  17

F. Supp. 2d at 1276.  "Otherwise, every trivial personnel action that an irritable, chip-on-the-

shoulder employee did not like would form the basis of a discrimination suit."  *Whitehead*

*v. Norfolk S. Ry.,*  53 F.Supp. 2d 1380, 1383 (M.D. Ga. 1999) (quoting *Williams v. Bristol-*

*Myers Squibb Co.,* 85 F.3d 270-74 (7th Cir. 1996)).

Despite Simmons' complaints of nitpicking, increased workload and attitudinal

change of her supervisors, she: (1) has received good evaluations in the two years that have

passed since her report about Roberts,  (Simmons Dep., pp. 131-132); (2) was normally

able to complete her assignments within her eight-hour shift and, when she could not, she

simply passed them off to the next shift, (Simmons Dep., p. 138); (3) has not been

disciplined for any failure to complete her assignments and, indeed, has not been

disciplined for anything since she reported Roberts; and (4) has received raises in each of

the two years since she reported Roberts. Simmons has simply failed to proffer any

evidence of an adverse employment action sufficient to support a claim for retaliation in violation of Title VII.[2]

5.      **Mobile Infirmary Medical Center - State Law Claims**

Simmons has asserted state law claims against MIMC of assault and negligent supervision, retention and training.  Both claims are barred by the applicable statute of limitations.

A.      **Assault/Battery Claim**

As stated above, Simmons claim for assault/battery, even if it could be said that a question of material fact existed regarding whether Roberts' conduct was offensive or harmful, is barred by the applicable statute of limitations.  The applicable statute of limitations for a claim of assault is two years.  *Wright, supra,* 654 So.2d at 544.  Simmons has testified that the last incident of alleged touching by Roberts actually occurred between the dates of August of 2001 and March of 2002.  Simmons did not file the present cause until June 7, 2004, approximately two months after the statute of limitations had, at the very latest, expired.  Simmons' contention that the limitations period was somehow tolled by the EEOC proceedings is unsupported by law and entirely without merit.

B.      **Negligent Supervision, Training and Retention Claim**

Although Simmons failed to even address in her reply brief the allegation that her claim for negligent supervision, training and retention was barred by the applicable statute

---

[2]*See,* n. 1, *supra.*

of limitations, such does not alter the fact.  The claim for negligent supervision arose when

Simmons experienced the alleged inappropriate conduct, which was occurred no later than

June 2, 2002. (Simmons Dep., pp. 55-56).  The applicable statute of limitations, set forth in

Ala. Code § 6-2-38(l) (1975), dictates that this claims be brought within two (2) years.  See

*Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 888 (Ala. 1995).  In order to be

timely, Simmons was required to file her complaint by June 2, 2004.  Instead, she filed her

complaint on June 7, 2004.  Her claim is, trherefore, barred by the applicable statute of

limitations.  Furthermore, as stated above, the limitations period was not tolled during the

time Simmons was attempting to obtain a right to sue letter from the EEOC.

## CONCLUSION AND ORDER

For the reasons stated above, the Court concludes and it is therefore **ORDERED**

that defendants' motions for summary judgment are due to be and are hereby **GRANTED**

and that **JUDGMENT** be entered in favor of the defendants, Mobile Infirmary Medical

Center and William S. Roberts, and against the plaintiff, Debra K. Simmons, the plaintiff to

have and recover nothing of the defendants.  Costs are taxed against the plaintiff.

**DONE** this 2nd day of August, 2005.

_____s/ W. B. Hand_____
SENIOR DISTRICT JUDGE